UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| HELEN ANN PARSON, | ) | C/A No. 4:10-742-RMG-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| vs. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

### I. PROCEDURAL HISTORY

The Plaintiff, Helen Parsons, filed an application for SSI on November 22, 2004. Her applications were denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on April 4, 2007. In a decision dated October 22, 2007, the ALJ found that plaintiff was not under a disability. The Appeals Council's denial of Plaintiff's request for review of the ALJ's decision made it the Commissioner's final decision for purposes of judicial

review. Plaintiff, *pro se*, filed her complaint on March 23, 2010, seeking judicial review of the Commissioner's decision.

## II.  FACTUAL BACKGROUND

The Plaintiff was born on October 20, 1963, and was forty-three (43) years of age on the date of her hearing before the ALJ. (Tr. 148).  She has a twelfth grade education and attended cosmetology school. Plaintiff's past work experience as a convenience store clerk, floor girl, hemmer, and line worker/supervisor. (Tr. 20). Plaintiff alleges disability due to morbid obesity and back pain.

## III.  DISABILITY ANALYSIS

The Plaintiff attempts to argue that the ALJ erred in finding that she was not disabled. In her response brief, Plaintiff states that "I couldn't lift up to fifty pound, or stand for 6 hrs, or sit that long if I wanted too. . ." (Doc. # 45). Plaintiff states in her brief and response brief that she stopped working to take care of her daughter who passed away in the year 2000. Plaintiff asserts that she has a growth on her stomach, needs money to obtain a car, and wants to go to Texas for treatment of her morbid obesity.

In the decision of October, 22, 2007, the ALJ found the following:

> (1).  The claimant has not engaged in substantial gainful activity since November 22, 2004, the application date (20 CFR 416.920(b) and 416.971 *et seq*.).
>
> (2).  The claimant has the following severe impairments: morbid obesity (20 CFR 416.920(c)).
>
> (3).  The claimant does not have an impairment or combination of impairments that meet or medically equals one of the listed

> impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

(4). After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of sedentary work.

(5). The claimant is unable to perform any past relevant work. (20 CFR 416.965).

(6). The claimant was born on October 20, 1963, and she was 41 yeas old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416. 963).

(7) The claimant has a high school education and is able to communicate in English (20 CFR 416.964).

(8). Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills. (20 CFR 404.960(c) and 416.966).

(9). Considering the claimant's age, education, work experience, and residual functional capacity for the full range of sedentary work, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 CFR 416.960(c), and 416.966).

(11). The claimant has not been under a disability, as defined in the Social Security Act, since November 22, 2004, the date the application was filed. (20 CFR 416.920(g)).

(Tr. 12-21).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial

evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law.  Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978).  "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 390.  Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict.  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).   The Court's scope of review is specific and narrow.   It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence.   42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established.  Five questions are to be asked sequentially during the course of a disability determination.   20 C.F.R. §§ 404.1520, 1520a (1988).  An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

## IV. ANALYSIS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case. The medical records as set out by the defendant have not been disputed by the plaintiff and plaintiff did not set out a summary of the medical records in her *pro se* brief. Therefore, the undisputed and relevant medical evidence as stated by the defendant is set forth herein.

**1. Sandhills Medical Foundation**

Plaintiff first presented in December 2003 (Tr. 107), upon referral from the Chesterfield General Hospital, where an ultrasound of her abdomen showed she had gallstones (Tr. 105). In May

2004, Plaintiff indicated she was keeping a food diary and asked for diet pills (Tr. 103). In September 2004, Plaintiff admitted she had been out of her blood pressure medication for a month (Tr. 102). When she returned in November 2004, it was again noted she was noncompliant with taking medication as prescribed (Tr. 101).

X-rays of Plaintiff's lumbar spine taken in September 2005 were normal except for degenerative changes at L5-S1 (Tr. 126). X-rays of her left knee were normal (Tr. 125), and x-rays of her right knee showed only degenerative changes, but with no acute findings (Tr. 123). During an examination in September 2005, Plaintiff voiced no complaints (Tr. 121). In January 2006, Plaintiff admitted she had been out of her blood pressure medications for a month, and complained of swelling in her left leg and feeling light-headed (Tr. 118).

**2. Lubummi Myles, M.D.**

In June 2007, Plaintiff underwent a consultative physical examination performed by Dr. Myles, in connection with her application for SSI benefits (Tr. 130-144). Plaintiff complained of shortness of breath, swollen legs and ankles, and back pain (Tr. 130), and claimed to have undergone bypass surgery in 2005 (Tr. 131). Dr. Myles stated in his report that she was morbidly obese and was unable to move from her chair to the examining table so that he examined her in the chair. (Tr. 131). Dr. Myles opined that Plaintiff's hypertension was well controlled with medication, and that her pain seemed to be controlled with over-the-counter Tylenol (Tr. 133). Dr. Myles completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" form, in which he concluded Plaintiff could occasionally lift up to fifty pounds; sit for six hours at a time, for a total of seven hours in an eight-hour workday; stand for three hours at a time, for a total of four hours; walk for

one hour at a time, for a total of two hours; and that she did not require the use of a cane to ambulate (Tr. 135-136).

### 3. State agency

In July 2005, F. Keels Baker, M.D., a State agency medical consultant, completed a "Physical Residual Functional Capacity Assessment" form (Tr. 108-115). Based on a review of the evidence of record, Dr. Baker concluded Plaintiff retained the residual functional capacity to occasionally lift up to fifty pounds; frequently lift up to twenty-five pounds; stand and/or walk for about six hours per day; and sit for about six hours per day (Tr. 109).

### V. ARGUMENTS

In her *pro se* one page brief Plaintiff states that she is morbidly obese, has a growth on her stomach, suffered from depression after the loss of her mother and daughter in 2000, and is unable to lift, sit and stand as indicated in the physician reports submitted. She attached copies of pictures of her stomach and legs. Plaintiff's argument appears to be that the ALJ erred in finding that she could perform sedentary work due to her morbid obesity.

Defendant argues that the ALJ's decision that plaintiff was not disabled was based on substantial evidence. Defendant argues that there is no dispute that Plaintiff is morbidly obese but that she has made no showing that her obesity would preclude her from performing the requirements of sedentary work.

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, <u>Richardson</u>, 402 U.S. at 390. Even where the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock,</u> 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this court cannot reverse that decision merely because the evidence would permit a different conclusion. <u>Shively v. Heckler</u>, 739 F.2d at 989.

First, the ALJ found that Plaintiff was not working and had not engaged in substantial gainful activity since November 22, 2004, the application date. At the second and third steps of the sequential evaluation, the ALJ determined that the medical evidence indicates that Plaintiff has the severe impairment of morbid obesity. Further, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. The ALJ found that Plaintiff has the residual functional capacity to perform the full range of sedentary work, but determined that Plaintiff is not able to return to her past relevant work. Therefore, the burden shifted to the Commissioner to show that other jobs exit in significant numbers in the national economy that Plaintiff can perform based on her residual functional capacity, age, education, and work experience.

The Plaintiff appears to argue that the ALJ erred in finding that she could perform a full range of sedentary work. However, based on the evidence, there is substantial evidence to support the decision of the ALJ.

Pursuant to SSR 02–lp, an ALJ is to consider obesity in determining whether a claimant has medically determinable impairments that are severe, whether those impairments meet or equal any

listing, and finally in determining the RFC. The Plaintiff bears the burden of producing medical evidence about the impact of her obesity on her other impairments at steps three and four. See Burch, 400 F.3d at 679 (holding claimant carries initial burden of proving disability in steps one through four of the analysis). Importantly, SSR 02-1p has done nothing to alter the Commissioner's regulations. The duty to evaluate a claimant's symptoms, imposed by 20 C.F.R. § 404.1529(c), does not extend to guessing the impact of a condition. Rather, §§ 404.1512(c) and 404.1545(a)(3) explicitly impose upon the claimant the burden of furnishing evidence supporting the existence of a condition and the effect of that condition on the claimant's ability to work on a sustained basis. 20 C.F.R. §§ 404.1512, 416.912 ("In general, you have to prove to us that you are blind or disabled . . . This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) . . . "). A condition that does not result in any functional impairment is not relevant to the RFC analysis.

The ALJ thoroughly discussed Plaintiff's medical evidence in his decision. In Plaintiff's case, the ALJ found she has a severe impairment of morbid obesity. Moreover, the ALJ stated the following in his decision:

> In testimony and other various reports of record, the claimant alleges she is disabled due to her obesity. The claimant testified that she weighed about 480 pounds in 2004 but that she now weighs 540 pounds. She alleges she has pain in her back and joints; limited mobility; limited ability to stand; swelling in her legs; high blood pressure; and shortness of breath when walking even short distances. The claimant testified she was turned down for gastric bypass surgery due to her body mass index. She testified she has blood clots and has to elevate her legs. The claimant testified she has been treated at Sandhills Medical two to five times since January 2006, and that she is not treated elsewhere. She testified she has not been hospitalized, and that she sought emergency room treatment only twice for spots under her skin.
>
> The medical evidence reveals the claimant was treated at Sandhills Medical Foundation, and the physical examinations essentially showed the claimant was obese, but that she had no musculoskeletal or cardiac, respiratory, neurological, or

9

> psychiatric abnormalities. In December 2003, the claimant experienced abdominal pain. Abdominal ultrasound showed multiple echogenic mobile gallstones. The common bile duct, liver, kidneys, and pancreas were normal. Surgery was not indicated. The claimant was seen on November 1, 2004, for re-check at which time she weighed in excess of 350 pounds. The claimant was noted to be medically noncompliant at the time. She did not return for treatment again until three months later on February 7, 2005, again for re-check. . . . On June 23, 2005, the claimant denied lower extremity pain, shortness of breath, dyspnea on exertion, chest pain, or other arthralgias or joint pain. At that time, she was noted to have waddling gait and lower extremity edema; however, she had normal inspection of her spine, and she also had no skin changes or open lesions.
>
> On September 6, 2005, a lumbar x-ray showed degenerative changes at L5-S1 but normal alignment and no fractures. The impression was no acute findings noted. X-rays of her left knee were normal, and her right knee showed degenerative changes of the lateral compartment and patella with osteophytes; however, there was no evidence of fractures or acute findings.

(Tr. 16).

The ALJ further noted the following:

> The claimant underwent a consultative examination on June 22, 2007, by Dr. Lubummi Myles. Her chief complaints were shortness of breath with minimal activity; swelling and pain in her legs and ankles, worse on the left; and back pain. The claimant said she took Tylenol for her back pain. The claimant denied chest pain, orthopnea, chronic cough, nausea, vomiting, diarrhea. Seizures, headaches, syncope, or genitourinary complaints. On exam she weighed in excess of 350 pounds at a height of 5 feet 6 inches, and her blood pressure was 110/80, pulse rate 80, and respiration was 18. She had no significant skin changes and had no cardiopulmonary distress at rest. Her visual acuity was 20/20 bilaterally. Her heart sounds were normal, and her lung fields were clear. Both upper and lower extremities had full range of motions, and her left lower extremity seemed to be retaining fluid. She had no obvious neurological deficits. Dr. Myles reported her shortness of breath was likely related to her morbid obesity and poor conditioning; that her leg symptoms and back pain were likely related to her morbid obesity and degenerative changes and were fairly controlled with over-the-counter medication. He also noted her hypertension was well controlled with medication.
>
> Dr. Myles completed a physical medial source statement indicating the claimant was able to occasionally lift and/or carry up to 50 pounds; sit 6 hours at a time and 7 hours in an 8-hour work day; never climb ladders or scaffolds; frequently stoop, kneel, crouch, and crawl; frequently reach overhead; continuously reach in other directions, handle, finger, feel, push, pull and operate foot controls; never work at unprotected heights; frequently work around moving mechanical parts, humidity,

wetness, dust, odors, etc., temperature extremes, and vibration, and operate a vehicle. He reported she did not need a cane to ambulate, and that she could tolerate moderate office noise. Dr. Myles also commented that the claimant could shop, travel without assistance, ambulate without assistance, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace with the use of s single hand rail, prepare a simple meal and feed herself, care of her personal hygiene, and sort, handle, and use paper files. As to her vision, he noted she was able to read very small and ordinary print, view a computer screen, and differentiate differences in shape and color of small objects.

. . .

In summary, the evidence clearly shows the claimant is morbidly obese, weighing in excess of 400 pounds. It is reasonable to conclude that her obesity restricts the claimant to sedentary work; however, the evidence demonstrates that her obesity has not resulted in any severe cardiovascular complications, coronary artery disease, or accidents or injury. The evidence demonstrates the claimant retains the ability to sit for prolonged periods of time and to effectively use her upper and lower extremities to lift small objects, reach, handle, finger, feel, push, and pull. She does not need a cane for ambulation, and the records do not demonstrate the claimant has other musculoskeletal, cardiac, respiratory, neurological, or psychological impairments. She has hypertension that can be effectively treated with medications; and she also experiences occasional left leg edema; however, the medical evidence shows the claimant is not compliant with taking her medication as prescribed which likely exacerbates these symptoms. On November 1, 2004, she was noted to be medically noncompliant. On June 6, 2005, the claimant admitted she had not taken her blood pressure medications in 3-4 days; and on January 17, 2006, she admitted she had not taken her blood pressure medication in four weeks. With medical compliance, these symptoms could likely be effectively controlled. The claimant did not require frequent physician intervention due to pain or other complaints but was seen about every four to five months only for routine check-ups. The claimant has not required hospitalization or frequent emergency room treatment due to any alleged impairment. Her alleged pain is effectively treated with over-the-counter medication. A Claimant's limited use of pain medication, failure to even fill prescriptions prescribed for only mild to moderate pain, discontinuance of physical therapy sessions, failure to sustain any consistent medical regimen for treatment, lack of hospitalizations or emergency room visits, or other significant treatment for pain constitute specific evidence which supports an acceptable credibility determination that pain and other symptoms are not disabling. . . . although the claimant's obesity is considered to be a "severe" impairment, there is no evidence that obesity markedly limits her ability to function and or to perform routine activities within a work environment.

. . .

> . . .
>
> Upon review of the total evidence of record, and in consideration of the combined effect of the claimant's impairments, including all severe and nonsevere impairments, and subjective complaints, I find that the claimant's morbid obesity reasonably restrict the claimant to sedentary work . . .

(Tr. 17-19).

The ALJ discussed and considered Plaintiff's impairments and the medical evidence. Plaintiff did not present any evidence from a physician that her condition prevented her from performing sedentary work Plaintiff underwent a medical examination with Dr. Myles who completed a report and physical medical source statement indicating Plaintiff was capable of performing sedentary work. (Tr. 130-140). Further, X-ray reports of her right knee, left knee, and lumbar spine revealed no fractures or abnormalities other than degenerative changes. (Tr. 123, 125, 126). The ALJ considered her activities of daily living in determining her residual functional capacity, considered the fact that she has not required hospitalization or frequent emergency room treatment, considered the fact that her alleged pain is effectively treated with over-the-counter medication, and considered the fact that there is no evidence that her obesity markedly limits her ability to function. The ALJ considered her conditions, activities, and capabilities, including her testimony at the hearing as to pain and other subjective symptoms, and determined it was not consistent with her allegations with regard to impairments.

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson, 402 U.S. at 390. Even where the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this

court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989.

Pro se pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam). However, a court may not construct the petitioner's legal arguments for him. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir.1985), *cert. denied*, 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 729 (1986).[1] This court's review is limited to whether the ALJ's findings are supported by substantial evidence and whether he applied the correct law. As set out, the ALJ explained his assessment and his findings are supported by substantial evidence.

## VI. CONCLUSION

Based upon the foregoing, this Court concludes that the ALJ's findings are supported by substantial evidence. Therefore, it is RECOMMENDED that the Commissioner's decision be AFFIRMED.

s/Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

October 25, 2011
Florence, South Carolina

---

[1] As set forth above, the undersigned cannot make arguments for a party. However, it is noted that in his history report, Dr. Myles indicates Plaintiff "was actually unable to get to the exam table. It was very hard for her to move, so she was examined on the chair." (Tr. 131).

**The parties' attention is directed to the important notice on the next page**